**For the Best Interest and Protection of G.H., Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 14–02–00310–CV, 14–02–00328–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 24, 2002.

Mark J. Kelly, Texas City, Lois McCarnes, Galveston, for appellant.

B. Warren Goodson, Jr., Galveston, for appellee.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## MAJORITY OPINION

SCOTT BRISTER, Chief Justice.

Appellant G.H. was involuntarily committed for temporary inpatient mental health services and administration of psychoactive medication for a period not to exceed ninety days. Through her attorney ad litem, she challenges the legal and factual sufficiency to support this order. We affirm.

The medical records indicate G.H. has a history of bipolar disorder "with psychotic features." She was brought to the emergency room of the University of Texas Medical Branch by a mental health deputy due to disruptive and disorganized behavior at home. When she arrived, she was unclean, yelling, and "washing her hair in cold water." She also was delusional, complaining that her 13–year–old grandchildren were stored in test tubes at the hospital.

At the commitment hearing, G.H.'s testimony showed not only that she was suffering from delusions, but that she refused any medication to treat her condition. Although G.H.'s attorney characterizes her behavior as merely "disorganized" and "irritable," the evidence clearly shows she suffers from severe mental distress. The specialists who examined her so testified, and gave concrete examples of her behavior to confirm their conclusions.

The trial court ordered temporary commitment, finding there was clear and convincing evidence that G.H. was (1) likely to seriously harm herself, and (2) experiencing a substantial deterioration of her ability to function independently and was unable to make a rational and informed decision whether to submit to treatment. TEX. HEALTH & SAFETY CODE 574.034(a)(2). To be clear and convincing, the evidence supporting these findings must include "a recent overt act or a continuing pattern of behavior that tends to confirm ... the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE 574.034(d)(2).

We believe there is factually and legally sufficient evidence to support the trial court's second ground. The medical records and testimony established delusional and disruptive overt acts, both at home and at the emergency room, that showed a substantial deterioration of G.H.'s ability to function independently. It is hard to imagine how she could function in supermarkets, retail stores, welfare or other government offices, or public transportation with these disabilities.

Nor was there evidence that any friend or family member was available to help her cope with these necessaries of daily life. There was no one at G.H.'s home who could care for her; to the contrary, her elderly father had been relying upon her to take care of him.

Additionally, there was evidence that G.H. was unable to make a rational and informed decision whether to submit to treatment, and that outpatient treatment without commitment was unlikely to be successful. The medical records indicate G.H. had been "hospitalized several times in the past" and "has been noncompliant with med[ication]s on an outpatient basis." The testimony at the commitment hearing indicated she refused medications that would help her because she claimed she was allergic to them. While her treating doctor admitted he had not thoroughly investigated her alleged allergies, he testified that the type and dosage of these medications could be adjusted to make allergies a non-issue. The trial court was in the best position to judge who was testifying accurately about why G.H. was refusing the medications she needed.

Several courts have held a patient's refusal to take medication is insufficient to support temporary commitment.[1] But others appear to recognize this refusal may affect a proposed patient's ability to function and make rational decisions about treatment.[2] We believe (1) G.H.'s refusal to take prescribed medication, (2) her actions at home that caused her family to

**1.** See *Johnstone v. State,* 961 S.W.2d 385, 389 (Tex.App.-Houston [1st Dist.] 1997, no writ) (holding patient's refusal to take medication was legally insufficient as overt act or pattern of behavior to support commitment); *Broussard v. State,* 827 S.W.2d 619, 621 (Tex.App.-Corpus Christi 1992, no writ) (same); *In re J.S.C.,* 812 S.W.2d 92, 95–96 (Tex.App.-San Antonio 1991, no writ) (holding patient's refusal to take medication was factually insufficient to support commitment).

**2.** See *In re State for Best Interest and Protection of K.D.C.,* 78 S.W.3d 543, 550 (Tex.App.-Amarillo 2002, no pet.) (finding no evidence of overt act or pattern of behavior, but sug-

gesting such evidence might include discontinuance of prescribed medications); *D.J. v. State,* 59 S.W.3d 352, 356–57 (Tex.App.-Dallas 2001, no pet.) (holding testimony that patient was not taking medication insufficient without proof of what those medications were or that failure to take them would lead to deterioration); *Mezick v. State,* 920 S.W.2d 427, 430 (Tex.App.-Houston [1st Dist.] 1996, no pet.) (holding evidence that patient refused all medication, did not believe he was ill, and lost thirty pounds in three months sufficient to establish likelihood of serious harm to himself).

contact a mental health deputy, and (3) her bizarre behavior at the emergency room are recent overt acts that tend to confirm her distress and deteriorating ability to function.

Texas law does not require relatives or physicians of the mentally ill (or the courts) to stand idly by until serious harm occurs. Indeed, the purpose of temporary commitment is to avoid just such harm. In this case the evidence concerning G.H.'s acts and behavior tends to confirm the trial judge's conclusion that she was likely to suffer substantially deteriorated ability to function independently due to her severe mental distress, and to be unable to take the steps needed to remedy it. Thus, we overrule appellant's points of error, and affirm the trial court's judgment.

SEYMORE, J. dissents.

CHARLES W. SEYMORE, Justice, dissenting.

Because the evidence is legally insufficient to support the trial court's orders for temporary commitment to mental health services and administration of psychoactive medications to G.H., I respectfully dissent.

Before a court is allowed to take away the liberty of any citizen, a fact finder must conclude from clear and convincing evidence that the proposed patient is mentally ill and also establish at least one of the additional criteria set forth in section 574.034(a)(2). *See* TEX. HEALTH & SAFETY CODE ANN. 574.034 (Vernon Supp.2002). As required by section 574.034(b), the majority concludes that G.H. had severe and abnormal mental, emotional, or physical distress, exhibiting her inability to provide for her basic needs or make an informed decision about whether to submit to treatment (section 574.034(a)(2)(C)). However, the State did not present evidence that a recent overt act would indicate G.H. might

harm herself or is unable to care for herself. In order to fulfill the statutory standards for involuntary commitment, the State cannot rely solely on a physician's opinion that G.H. is mentally unstable. *See K.T. v. State*, 68 S.W.3d 887, 894 (Tex. App.-Houston [1st Dist.] 2002, no pet.); TEX. HEALTH & SAFETY CODE ANN. 574.034(d) (requiring evidence of recent overt act or continuing pattern of behavior to support inpatient mental commitment).

The majority held that (1) G.H.'s refusal to take prescribed medication; (2) her actions at home that caused her family to contact a mental health deputy; and (3) her bizarre behavior at the emergency room are recent overt acts that confirm her inability to function.

The majority has disregarded a preponderance of case authority and precedent by suggesting that a patient's refusal to take medications constitutes overt acts. *See Johnstone v. State*, 961 S.W.2d 385, 389 (Tex.App.-Houston [1st Dist.] 1997, no writ) (holding patient's refusal to take medication was legally insufficient as overt act or pattern of behavior to support commitment); *Broussard v. State*, 827 S.W.2d 619, 621 (Tex.App.-Corpus Christi 1992, no writ) (same); *In re J.S.C.*, 812 S.W.2d 92, 95–96 (Tex.App.-San Antonio 1991, no writ) (holding patient's refusal to take mediation was factually insufficient to support commitment).

The majority may deem refusal to take medication, behavior at the emergency room, and certain actions in her home to be evidence of behavioral patterns that support commitment. I disagree. In *Broussard v. State*, a woman diagnosed with chronic paranoid schizophrenia had been involuntarily committed for temporary mental health services. 827 S.W.2d 619, 620 (Tex.App.-Corpus Christi 1992, no writ). Experts testified as to the woman's

delusional, incoherent thoughts and her refusal to take medications. *Id.* at 621. A doctor testified that the woman would continue to deteriorate if not treated. *Id.* The doctor noted that the woman had six or seven prior admissions for the same condition. *Id.* at 620. The appellate court found no evidence that the woman was likely to cause harm to others and no evidence of an overt act or continuing pattern of behavior to show deterioration of her ability to function. *Id.* at 622. The court reasoned that evidence merely reflecting that an individual is mentally ill and in need of hospitalization is not evidence the statutory standard has been met. *Id.* The court further reasoned that psychotic behavior, alone, is insufficient to justify commitment on the grounds of mental distress and deterioration of the ability to function independently. *Id.*

The court in *Broussard* also required evidence of a recent overt act or continuing pattern of behavior to prove distress and continued deterioration of ability to function under subsection (C). *Id.; see also K.T.,* 68 S.W.3d at 893 (holding that a patient's recurring delusions that the staff was poisoning her food was not an overt act that proved the patient could not provide for her own basic needs).

The San Antonio Court of Appeals dealt with a similar fact situation in *In re J.S.C.,* 812 S.W.2d 92 (Tex.App.-San Antonio 1991, no writ). In *J.S.C.,* a doctor testified that the male patient refused medication and that his ability to function independently would continue to deteriorate. *Id.* at 95. The court found the evidence insufficient because the State did not show an overt act or continuing pattern of behavior. *Id.* at 96. The doctors testimony that the patient was unable to care for himself outside the hospital was insufficient to satisfy the statutory requirements. The record did not include evidence of specific overt

acts to support that conclusion. *Id.* at 95–96.

In *L.S. v. State,* 867 S.W.2d 838 (Tex. App.-Austin 1993, no writ), the Austin Court of Appeals found a continuing pattern of behavior or recent overt acts to support involuntary commitment. A doctor testified regarding three specific patterns of behavior demonstrating the patient's need for hospitalization: (1) burning his skin with cigarettes; (2) drinking excessive amounts of water, causing him to gain ten pounds in an eight-hour period; and (3) an unauthorized departure from the psychiatric facility for six days. *Id.* at 842. The court found the testimony provided sufficient evidence of a continuing pattern of behavior or recent overt acts. *Id.* at 843. I do not believe that the behavior in this case rises to this level.

The majority contends that G.H.'s irrational thoughts and unwillingness to take psychoactive medications suffice as recent overt acts exhibiting inability to care for herself. However, there was no evidence presented that G.H. was unable to care for herself before she was involuntarily hospitalized. In fact, the evidence presented tends to support the opposite conclusion. G.H. was the sole caretaker of herself and her elderly father for a number of years. Further, G.H.'s reluctance to take psychoactive medications and other medications due to religious beliefs and allergies offers no proof of a deteriorating mental state. The physician even testified he had not conducted a thorough investigation of G.H.'s alleged allergies. The State provided no evidence to discredit G.H.'s reasons for refusing to take the medications. No witnesses provided testimony regarding G.H.'s behavior in supermarkets, retail stores, and grocery stores, however, the majority suggests that she cannot function in them. This conclusion is not supported by the record. There is

no evidence in the record that G.H. had a difficult time completing daily tasks sufficient to provide for her basic needs.

I understand the majority's reluctance to deny court-ordered treatment for a person who is mentally ill. However, the state failed to adduce evidence specifically addressing G.H.'s inability to take care of her basic needs. In reviewing the relevant case law interpreting subsection (C), I conclude that the evidence was insufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the State's contentions. *See K.T.*, 68 S.W.3d at 893–94; *Johnstone*, 961 S.W.2d at 389; *L.S.*, 867 S.W.2d at 843; *Broussard*, 827 S.W.2d at 622; *J.S.C.*, 812 S.W.2d at 96.

The State has not produced clear and convincing evidence of a recent overt act or continuing pattern of behavior warranting involuntary commitment of G.H. Evidence merely reflecting that she is mentally ill and in need of hospitalization does not fulfill the statutory standards.

Accordingly, I respectfully dissent.