NO. 12-03-00061-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS



THE STATE OF TEXAS FOR
§
 APPEAL FROM THE 


THE BEST INTEREST AND
§
 COUNTY COURT AT LAW OF


PROTECTION OF G.S.F.
§
 CHEROKEE COUNTY, TEXAS







MEMORANDUM OPINION


 Appellant G.S.F. appeals from a judgment ordering his commitment for temporary inpatient
mental health services pursuant to section 574.034 of the Texas Health and Safety Code. After a
hearing, the trial court ordered G.S.F. committed to Rusk State Hospital for a period not to exceed
ninety days. (1) In six issues, G.S.F. challenges the legal and factual sufficiency of the evidence and
asserts various constitutional issues. We reverse and render.


Background


 On January 29, 2003, an Application for Court-Ordered Temporary Mental Health Services
was filed with the County Clerk of Cherokee County, Texas. The application stated that G.S.F. was
mentally ill and that he met the criteria in section 574.034 of the Texas Mental Health Code for court-ordered temporary mental health services. At the time the application was filed, G.S.F. was a patient
at Rusk State Hospital (the "Hospital").

 The hearing on the application was held on February 4, 2003. At the conclusion of the
hearing, the trial court signed a final order for temporary inpatient mental health services for a period
not to exceed ninety days. In the order, the court stated the following:

 That after considering all the evidence, including the Certificates, the recommendation for the
most appropriate treatment alternative, if any, and the expert, competent medical or psychiatric
testimony, it appears to the Court that the allegations of the Application and Certificates are true and
correct and are supported by clear and convincing evidence that the Patient is mentally ill and as a
result of that mental illness the Patient meets at least one of the following specified additional criteria:
is likely to cause serious harm to others; or is: (i) suffering severe and abnormal mental, emotional, or
physical distress; (ii) experiencing substantial mental or physical deterioration of the proposed patient's
inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including
food, clothing, health, or safety; and (iii) unable to make a rational and informed decision as to whether
or not to submit to treatment.


See Tex. Health & Safety Code Ann. § 574.034(a)(2) (Vernon Supp. 2003).


Sufficiency of the Evidence


Burden of proof and standard of review

 Section 574.034 of the Texas Health and Safety Code contains the criteria for court-ordered
temporary inpatient mental health services. The court may order a proposed patient to receive
temporary inpatient mental health services only if the factfinder concludes from clear and convincing
evidence that because of mental illness, the proposed patient is likely to cause serious harm to himself
or others, or is suffering severe and abnormal mental, emotional, or physical distress, is experiencing
substantial mental or physical deterioration of the ability to function independently, as exhibited by
the inability, except for reasons of indigence, to provide for basic needs, and is unable to make a
rational and informed treatment decision. Tex. Health & Safety Code Ann. § 574.034(a).

 The State has the burden of establishing the statutory elements by clear and convincing
evidence. Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.-Houston [1st Dist.] 1996, no writ). 
"Clear and convincing evidence" is an intermediate standard, falling between the preponderance of
the evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal
proceedings. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). The Texas Supreme Court has
defined "clear and convincing evidence" as "that degree of proof which will produce in the mind of
the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." 
Id. at 570. When court-ordered temporary mental health services are sought, an additional
requirement for clear and convincing evidence is imposed. To be clear and convincing under section
574.034(a), the evidence must include expert testimony and, unless waived, evidence of a recent
overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to
the proposed patient or others or the proposed patient's distress and the deterioration of the proposed
patient's ability to function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon Supp. 2003).

 In reviewing a legal sufficiency or no evidence complaint, the appellate court must look at
all the evidence in the light most favorable to the finding to determine whether a reasonable trier of
fact could have formed a firm belief or conviction that the alleged fact is true. In re J.F.C., 96
S.W.3d 256, 266 (Tex. 2002). In doing so, the court must assume the factfinder resolved disputed
facts in favor of its finding if a reasonable factfinder could do so. Id. The reviewing court should
disregard all evidence that a reasonable factfinder could have disbelieved or found to have been
incredible. Id. 

 When conducting a factual sufficiency review, the appellate court must consider all of the
evidence, including any evidence contrary to the verdict. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).
In conducting the review, the court must determine whether the evidence is such that a factfinder
could reasonably form a firm belief or conviction about the truth of the State's allegations. Id.

The Evidence

 At the hearing on the application, the State introduced as evidence two physician's
certificates. One of the two certificates, which was completed by Dr. Z. Moin, states that G.S.F.
suffers from psychosis NOS and is mentally ill. Further, Dr. Moin states in his certificate that G.S.F.
is likely to cause serious harm to others; is suffering severe and abnormal mental, emotional or
physical distress; is experiencing substantial mental or physical deterioration of his ability to function
independently, which is exhibited by his inability, except for reasons of indigence, to provide for his
basic needs, including food, clothing, health, or safety; and is unable to make a rational and informed
decision as to whether or not to submit to treatment. As the basis for his opinion, Dr. Moin noted that
G.S.F. is "confused, disorganized, and paranoid" and that he was "loud, threatening in the
admission." The second certificate was completed by Dr. Sethurama Srinivasan, who agrees with
Dr. Moin's diagnosis as well as his conclusions that G.S.F. is likely to cause serious harm to others,
is experiencing substantial mental or physical deterioration of his ability to function independently,
and is unable to make a rational treatment decision. Dr. Srinivasan describes G.S.F. as "confused,
hyperactive and delusional" and states that G.S.F. "needed to be restrained after admission because
of aggression." 

 Dr. Moin testified at the hearing. He stated that he reached the conclusions set out in his
physician's certificate by reviewing the records and talking to G.S.F. initially in admission and later
in the unit. He described G.S.F. as "very confused, disorganized, loud and threatening on the unit." 
He further stated that G.S.F. threatened to kill everyone and had to be restrained and put in seclusion. 
According to Dr. Moin, they "needed at least eight mental health workers to prevent him from trying
to hurt other folks. He received several PRN medications for increased agitation and threatening
behavior." However, Dr. Moin conceded that G.S.F.'s behavior was verbal rather than physical. He
recalled that G.S.F. received emergency medications to address threatening behavior three times, was
restrained at least once, and was placed in seclusion at least twice, with the most recent occasion
being the day before the hearing. However, he related no specific details of the incidents. In Dr.
Moin's opinion, G.S.F.'s behavior evidences a continuing pattern of behavior that tends to confirm
the likelihood of his causing serious harm to others and also his distress and the deterioration of his
ability to function.

 On cross-examination, Dr. Moin testified that G.S.F. committed no overt physical act to harm
himself or anyone else. He further testified that G.S.F. is currently on medication and signed a
written consent to the medication. As a result, he concluded that G.S.F. has the capacity to make a
rational and informed treatment decision. He also stated that G.S.F. is able to dress and feed himself
without assistance, can initiate and respond to conversation, and can take care of his personal hygiene
but needs prompting.

 G.S.F. testified that he wishes to go home, and that if he is only being kept for observation
and treatment, both of those could occur while he is at home. He is currently taking his medication
without problems, and he would go to his mother and dad's house in Huntington, Texas if released,
which is where he was living prior to his admission to the Hospital. He would continue taking Haldol
if it can be taken only at night. He has no desire to hurt himself or anyone else. According to G.S.F.,
he helps his mother around the house by performing routine household tasks. He has no source of
income, but would have income as soon as he could find a job.

 Gloria Jones, G.S.F.'s mother, also testified. She stated that G.S.F. had been living in her
home since approximately November 5, 2002. She explained his problem as being "too domineering
at the time of verbal discussions." On the day he was admitted to the Hospital, "[h]e was all upset
over approximately six or seven different occasions. This happened since July concerning his son,
concerning his other children, concerning his work, concerning his job." She did not give further
details about the nature of these situations. However, she testified that he was not physically violent,
but has been what she characterized as "verbally violent." She also stated that when "he seen where
he was fixing to get violent, he would back off." She is not afraid that he will hurt her. She stated
that she initiated the call resulting in G.S.F.'s admission to the Hospital because he went jogging at
3:00 a.m., and she thought he carried his pocket knife with him. Because he was under so much
stress and pressure, she was afraid he might hurt himself. She later learned that he had removed his
knife from his pocket before he left the house, and she admitted she had worried unnecessarily.

Legal Sufficiency

 G.S.F. argues that the State failed to present evidence of a recent overt act or continuing
pattern of behavior tending to confirm the likelihood that G.S.F. will cause serious harm to himself
or others or that G.S.F. is distressed and that his ability to function will continue to deteriorate. See
Tex. Health & Safety Code Ann. § 574.034(d) (Vernon Supp. 2003). Therefore, he contends, the
evidence is both legally and factually sufficient to support the trial court's order. The State did not
file an appellee's brief.

 At trial, Dr. Moin admitted that G.S.F. committed no overt act to harm himself or others. 
Further, the State presented no evidence that G.S.F. is unable to function independently. Therefore,
we consider whether G.S.F. has engaged in a continuing pattern of behavior that tends to confirm he
will cause serious harm to others.

 Each doctor made a reference in his physician's certificate to G.S.F.'s behavior on the date
of his admission to the Hospital. At the hearing on February 4, 2003, which was one week after Dr.
Moin examined G.S.F., Dr. Moin stated that G.S.F. had threatened to kill everyone and had to be
restrained and put in seclusion. He further stated that they "needed at least eight mental health
workers to prevent him from trying to hurt other folks." He described G.S.F.'s behavior after
admission as "threatening" and testified that G.S.F. received emergency medications to address his
behavior three times, was restrained at least once, and was placed in seclusion twice. 

 Expert diagnosis alone is not sufficient to confine a patient for compulsory treatment. 
Mezick, 920 S.W.2d at 430. The expert opinion and recommendations must be supported by a
showing of the factual bases on which they are grounded. Id. In other words, the expert should
describe the specific behaviors on which the opinion is based. See L.S. v. State, 867 S.W.2d 838, 844
(Tex. App.-Austin 1993, no pet.). Neither Dr. Moin nor Dr. Srinivasan specifically described any
of G.S.F.'s behavior that formed the basis of their respective opinions or explained how that behavior
supported a conclusion that G.S.F. was likely to cause serious harm to others. Although Dr. Moin
testified about the efforts necessary to protect others from G.S.F., he did not identify any behavior
that warranted those efforts and admitted that G.S.F. had committed no overt act that was an attempt
to harm another person. Therefore, we conclude that a reasonable trier of fact could not have formed
a firm belief or conviction that G.S.F engaged in a continuing pattern of behavior tending to confirm
the likelihood of serious harm to G.S.F. or others or G.S.F.'s distress and the deterioration of his
ability to function. See Tex. Health & Safety Code Ann. § 574.034(d). Consequently, the
evidence cannot be clear and convincing, see id., and the evidence is therefore legally insufficient to
support the trial court's order. Accordingly, we sustain G.S.F.'s first issue to the extent it challenges
the legal sufficiency of the evidence.

 Moreover, even if the evidence is legally sufficient to support the trial court's order, we
conclude from our review of the entire record that the evidence is factually insufficient to support the
order. Both G.S.F. and his mother testified that G.S.F. lived with his mother and dad. G.S.F.
testified that he helped his mother around the house. His mother testified that G.S.F. had been
experiencing stress and pressure but had not been physically violent. Their combined testimony
showed that although G.S.F. had been "verbally violent," he would "back off" before becoming
physically violent. G.S.F. testified that he had no desire to hurt himself or anyone else. Neither
testified that G.S.F. had engaged in any behavior prior to his admission to the Hospital which
indicated he was likely to commit serious harm to others. Dr. Moin confirmed that G.S.F.'s behavior
in the Hospital had been verbal and not physical. Consequently, we conclude that the factfinder could
not have reasonably formed a firm belief or conviction that the State's allegations were true.


Conclusion


 Having found the evidence legally insufficient to support the trial court's order of February
4, 2003, we reverse the judgment of the trial court and render judgment that the State's application
for temporary court-ordered mental health services is denied. Because we have sustained G.S.F.'s
first issue, we need not address his remaining issues. Tex. R. App. P. 47.1.

 

 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered August 29, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


































(PUBLISH)
1. The ninety-day commitment period has expired, but this appeal is not moot. In State v. Lodge, 608 S.W.2d
910, 911 (Tex. 1980), the Texas Supreme Court held that the doctrine of mootness does not apply to appeals from
involuntary commitments.