

# IN THE
# TENTH COURT OF APPEALS

### No. 10-24-00196-CV

## IN THE INTEREST OF D.P., AN ADULT,

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2022-651-C2**

## MEMORANDUM OPINION

D.P. was charged with aggravated assault with a deadly weapon, a vehicle. Specifically, D.P. was accused of intentionally and knowingly threatening a person with imminent bodily injury by accelerating the vehicle D.P. was operating toward the vehicle occupied by the other person, but D.P. was found incompetent to stand trial. He was committed to a mental health facility for competency restoration services. At some point, the trial court ordered extended inpatient mental health services. In May of 2024, the facility which housed D.P. evaluated D.P. and determined that D.P. remained incompetent. Consequently, the State initiated a proceeding for renewed extended mental health services, and after a jury trial, the trial court ordered D.P. committed for a period not to exceed 12 months. Because the evidence is sufficient and the admission of evidence, if erroneous, was not harmful, we affirm the trial court's judgment and order

of civil commitment.

**EXTENDED MENTAL HEALTH SERVICES**

The renewal of an order of extended mental health services is governed by section 574.066 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE § 574.066. A court may not renew an order unless the court or jury finds by clear and convincing evidence that the patient meets the criteria for extended mental health services under Sections 574.035(a)(1), (2), and (3). *Id.* (f); § 574.035(a). A renewed order authorizes treatment for not more than 12 months. *Id.* at § 574.066(f).

Section 574.035(a) of the Texas Health and Safety Code provides that a trial court may order temporary inpatient mental-health services if the factfinder finds, by clear and convincing evidence, that the patient is mentally ill, his condition is expected to continue for more than 90 days, and at least one of three criteria results from that mental illness. TEX. HEALTH & SAFETY CODE § 574.035(a); *see State ex rel. D.L.S.*, 446 S.W.3d 506, 515 (Tex. App.—El Paso 2014, no pet.); *L.S. v. State*, 867 S.W.2d 838, 841 (Tex. App.—Austin 1993, no writ). Two of the alternative criteria are that the patient is likely to cause serious harm to himself or others (criteria (A) and (B)). TEX. HEALTH & SAFETY CODE § 574.035(a)(2)(A)-(B). The third alternative criterion (criterion (C)) requires proof of three parts: (1) the patient is suffering severe and abnormal mental, emotional, or physical distress; (2) the patient's mental or physical deterioration impacts his ability to function independently, "which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for [his] basic needs, including food, clothing, health, or safety"; and (3) the patient is unable to make rational and informed decisions as to whether or not to submit

to treatment.  *Id.* § 574.035(a)(2)(C).

The statute does not propose what evidence must be presented, except that it must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm 1) the likelihood of serious harm to the patient or others; or 2) the patient's distress and the deterioration of the patient's ability to function.  *Id.* § 574.035(e)(1); *see State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (interpreting the same language in section 573.034(d)(1)).  Although the phrase "overt act" is not defined, the Texas Supreme Court has interpreted it to be an act by the patient, either physical or verbal, that can be objectively perceived and that is to some degree probative of a finding that serious harm to others is probable if the person is not treated.  *See* TEX. HEALTH & SAFETY CODE § 573.035(e)(1); *see also K.E.W.*, 315 S.W.3d at 24.  The overt act itself need not be of such character that it alone would support a finding of probable serious harm to others.  *Id.*

The jury found that D.P. met all of the statute's criteria.

**SUFFICIENCY OF THE EVIDENCE**

In his first issue, D.P. challenges the legal sufficiency of the evidence to support the jury's finding of criteria (A),[1] (B), and (C), and the factual sufficiency of the evidence to support the jury's finding of criterion (B).[2]  D.P. does not challenge the finding that

---

[1] We note that the trial court's judgment indicates the jury found D.P. was likely to cause serious harm to himself.  However, it appears from the copy of the court's charge provided in the clerk's record that the jury expressly did not find that D.P. was likely to cause serious harm to himself.  Nevertheless, for reasons expressed later in this opinion, this does not impact our disposition of D.P.'s first issue.

[2] Because D.P. challenged the legal and factual sufficiency of the evidence in a motion for new trial, he has preserved this issue for our review on appeal.  *See* TEX. R. CIV. P. 324(b); *T.O. Stanley Boot Co. v. Bank of El*

D.P. has a mental illness or that his condition is expected to continue for more than 90 days.

In evaluating evidence for legal sufficiency under a clear and convincing standard,[3] we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *see In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *K.E.W.*, 315 S.W.3d at 20; *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266. Likewise, in reviewing a factual sufficiency claim, we consider the evidence that the factfinder could reasonably have found to be clear and convincing and then determine, based on the entire record, whether the factfinder could have formed a firm belief or conviction that the allegations in the application were proven. *In re Interest & Prot. of N.H.*, 510 S.W.3d 529, 531 (Tex. App.—Dallas 2014, no pet.) (citing *In re J.F.C.*, 96 S.W.3d at 266).

Because it is dispositive, we first discuss whether the evidence to support the jury's finding that D.P. was likely to cause serious harm to others, criterion (B), is legally and factually sufficient.

---

*Paso*, 847 S.W.2d 218, 220-21 (Tex. 1992); *In the Interest of J.C.*, 582 S.W.3d 497, 500 (Tex. App.—Waco 2018, no pet.).

[3] Clear and convincing evidence is an intermediate evidentiary standard, requiring more than the preponderance of the evidence standard of ordinary civil proceedings, but less than the reasonable doubt standard of criminal proceedings. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). There is no requirement that the evidence must be unequivocal or undisputed. *Id*.

A hearing on an application for court-ordered mental health services may not be held unless there are on file with the court at least two certificates of medical examination for mental illness completed by different physicians each of whom has examined the patient during the preceding 30 days. TEX. HEALTH & SAFETY CODE § 574.009. The certificate must include the physician's opinion that the patient is mentally ill, his condition is expected to continue for more than 90 days, and at least one of three criteria listed in section 574.035(a), mentioned previously, results from that mental illness. *Id*. § 574.009.

Neither Dr. Russell Packard, the medical director over the psychiatric hospital at Palestine Medical Center, nor Dr. Stephen Mark, a board certified psychiatrist in Waco, indicated on their certificates of medical examination that D.P. was likely to cause serious harm to others. However, Dr. Mark explained in a letter to the trial court that D.P. could benefit from continued hospitalization. Without any treatment, Dr. Mark feared that D.P.'s condition would decline, and D.P. would become less functional. He also feared that if D.P. thought someone was after him or his family, D.P. might try to hurt that person first. Dr. Mark further testified that D.P. has a delusional disorder that could go on for years, and that two years after the underlying criminal offense, D.P. still believed the person D.P. threatened to assault with D.P.'s vehicle was evil, mafia connected, and could injure D.P. or D.P.'s family. With the delusional beliefs of someone trying to hurt D.P. or his family, Dr. Mark opined that "anyone could see a situation where maybe [D.P.] feels like he's seen that person who is going to hurt him or his family; and he proactively goes after that person…." Dr. Mark agreed that situation would include chasing a person

with a car thought to be targeting D.P. or his family and trying to "ram" into the person with D.P.'s car.[4] Dr. Mark agreed with the State that when D.P. reacts on a delusion, which could occur quickly and unexpectedly, D.P. could be a danger to others.

Dr. Yeatts, a forensic psychologist who evaluated D.P. for a competency determination a month before the commitment hearing, believed D.P. could be a danger to himself or others. Dr. Yeatts noted that D.P. had made threats while temporarily committed within the four months prior to the hearing toward his own family who then expressed fear to Dr. Yeatts. Dr. Yeatts also noted that D.P. was preoccupied with his delusions and was looking forward to acting on them. Dr. Yeatts asserted that D.P. still intended to prove all of the false beliefs were true and expose everyone in the process. Dr. Yeatts believed D.P. was limited in acting on his delusions only by the setting in which he was confined.

D.P. contends the evidence is legally insufficient because the expert testimony of a recent overt act by D.P. only addressed theoretical or potential harm to others while evidence of actual, dangerous behavior is required. But actual, dangerous behavior is not required. The Texas Supreme Court has said the overt act itself need not be of such character that it alone would support a finding of probable serious harm to others. *See State v. K.E.W.*, 315 S.W.3d 16, 24 (Tex. 2010) (again, interpreting the same language in section 573.034(d)(1)). The act need only be one that can be objectively perceived and that is to some degree probative of a finding that serious harm to others is probable if the person is not treated. *Id.* Thus, reviewing all the evidence in the light most favorable to

_____

[4] This is the factual scenario of the underlying criminal case.

the jury's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that the criterion of whether D.P. was likely to cause serious harm to others was true. Accordingly, the evidence is legally sufficient to support the jury's finding that D.P. was likely to cause serious harm to others.

D.P. next contends the evidence is factually insufficient to support the jury's finding that D.P. is likely to cause serious harm to others because the jury could not have believed Dr. Yeatts, a psychologist, over Dr. Packard, the psychiatrist in charge of D.P.'s treatment. We disagree with D.P.

Dr. Packard did not see D.P. regularly as a patient; rather, the nurse practitioner saw D.P. most of the time and reported back to Dr. Packard. Dr. Packard did not think D.P. was a danger to others because he believed D.P. only talked about his delusions and feared for his safety and that D.P. had no threatening-type of behavior even though Dr. Packard had previously read the police report and read the indictment to the jury in court. Further, Dr. Packard did not indicate that he met with the family regarding D.P.'s condition or their thoughts or fears of him being released.

Dr. Yeatts, on the other hand, met personally with D.P. two times, for a total of about two hours, a month before the commitment hearing. Based on D.P.'s statements, Dr. Yeatts knew that D.P. continued to hold on to the same delusion as when he arrived at the hospital and that D.P. still thought the person he targeted with his vehicle was tied to the mafia, was evil, and was a threat to his family. Dr. Yeatts also reviewed collateral reports, including those from D.P.'s treatment team, his inpatient records, and records that came from D.P.'s admission-to-the-facility packet. He spoke with D.P.'s family and

knew they were afraid of him. He knew D.P. had made threats to them. Further, he understood that D.P. remained intent on acting on his delusions and was only limited in doing so because of D.P.'s confinement.

Based on the entire record, and specifically the above-referenced evidence, the factfinder could have formed a firm belief or conviction that the allegation that D.P. was likely to cause serious harm to others was proven; and thus, the evidence was factually sufficient to support the finding.[5]

Issue one is overruled.

**RELEVANCE**

In his second issue, D.P. complains that the trial court erred in admitting Dr. Yeatts's competency evaluation report into evidence because it was irrelevant, and alternatively, if relevant, the probative value of the evaluation was outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 401, 403.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). Erroneous admission of evidence is harmless unless the error probably (though not necessarily) caused the rendition of an improper judgment. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008). A reviewing court must evaluate the whole case from voir dire to closing argument, considering the "state of the evidence, the

---

[5] Because only one statutory criterion must be met under section 574.035(a)(2), *see* TEX. HEALTH & SAFETY CODE § 574.035(a); *see State ex rel. D.L.S.*, 446 S.W.3d 506, 515 (Tex. App.—El Paso 2014, no pet.); *L.S. v. State*, 867 S.W.2d 838, 841 (Tex. App.—Austin 1993, no writ), we need not discuss the sufficiency of the evidence regarding the other criteria about which D.P. complains in his first issue.

strength and weakness of the case, and the verdict." *Id*.

Near the beginning of Dr. Yeatts's testimony, the State sought to introduce Dr. Yeatts's "Competency to Stand Trial Evaluation" into evidence. D.P. objected. After arguments by both sides, the trial court overruled D.P.'s objection, and the evaluation report was admitted into evidence. Assuming without deciding that the trial court abused its discretion in admitting the exhibit over D.P.'s relevance objection, we next determine whether D.P. was harmed.

In his argument supporting his relevance objection, D.P. was concerned that the issue of competency was not before the jury and would likely color the jury's opinions on the issues properly before it. However, the jury had been exposed to the concept of competency much earlier in the trial and without objection. In voir dire, the State informed the jury that it was not deciding competency; rather, it was deciding whether D.P. needed more treatment after being found incompetent. The State also explained the concept of competency to stand trial. Further, Dr. Yeatts explained, prior to the admission of the report and without objection, that he routinely performs competency evaluations and performed such an evaluation on D.P. After the admission of the evaluation, Dr. Yeatts never mentioned competency regarding his conclusions about whether D.P. should be committed again. Competency was not mentioned again until cross-examination by D.P. After Dr. Yeatts's testimony, no discussion of competency was made, even in argument to the jury. The trial court received no notes from the jury on the subject of competency. And although the verdict was not unanimous, there was no indication that the concept of competency was the culprit. Thus, reviewing the entire

record, we cannot say that the assumed error probably caused the rendition of an improper judgment.[6]

Accordingly, D.P.'s second issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's Judgment and Order of Civil Commitment; Charges Pending (Mental Illness) under Article 46B.102.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Smith, and
      Justice Rose[7]
Affirmed
Opinion delivered and filed December 31, 2024
[CV06]



---

[6] With this disposition, we need not discuss D.P.'s alternative Rule 403 argument.

[7] The Honorable Jeff Rose, Senior Chief Justice (Retired) of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.