

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00379-CV

## EX PARTE R.W.M.

_____

## From the County Court at Law No. 2
## Johnson County, Texas
## Trial Court No. F201100018

_____

## MEMORANDUM  OPINION

_____

Appellant R.W.M. appeals from a judgment of involuntary commitment for in-patient mental-health services for a period not to exceed ninety days and an order to administer psychoactive medication.  In two issues, Appellant argues that the evidence is legally and factually insufficient.  We will affirm.

In his first issue, Appellant contends that the evidence supporting the trial court's judgment of involuntary commitment is legally and factually insufficient.  In particular, Appellant asserts that the State did not present evidence of a recent overt act or a continuing pattern of behavior confirming that he poses a likelihood of causing serious harm to himself or others.  Appellant further asserts that the State did not present expert testimony demonstrating the need for further in-patient treatment.

The burden of proof for an involuntary commitment is clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). The same burden applies to an order to administer psychoactive medication. *See A.S. v. State*, 286 S.W.3d 69, 71 (Tex. App.—Dallas 2009, no pet.). Clear and convincing evidence is that "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979); *see A.S.*, 286 S.W.3d at 70. And, because the State's burden of proof is clear and convincing evidence, we apply a heightened standard of review. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

In reviewing a legal-sufficiency claim, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). On the other hand, when reviewing a factual-sufficiency claim, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a factfinder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Id.*

Section 574.034(a) of the Health and Safety Code provides that a trial court may order temporary inpatient mental-health services if it finds by clear and convincing evidence that the patient is mentally ill and at least one of three criteria results from that mental illness. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a). Two of the alternative criteria are that the patient is likely to cause serious harm to himself or others. *Id.* §

574.034(a)(2)(A)-(B). The third alternative criterion requires clear and convincing evidence that: (1) Appellant is suffering severe and abnormal mental, emotional, or physical distress; (2) Appellant's mental or physical deterioration impacts his ability to function independently, "which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for [his] basic needs, including food, clothing, health, or safety"; and (3) Appellant is unable to make rational and informed decisions as to whether or not to submit to treatment. *Id.* § 574.034(a)(2)(C).

For the State to satisfy its burden of clear and convincing evidence, section 574.034 states that the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the patient or others; or (2) the patient's distress and the deterioration of the patient's ability to function. *Id.* § 574.034(d). The recent overt act or continuing pattern of behavior must relate to the criteria on which the judgment is based. *T.G. v. State*, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.). The expert's opinions and recommendations must be supported by a showing of the factual bases on which they are grounded. *Id.*

It is undisputed that Appellant, a fifty-year-old male, suffers from severe mental illness and is being cared for by staff at Pecan Valley Centers for Behavioral Health and Intellectual Disability in Johnson County. Psychiatrists William Beatty, M.D. and Zahida Syed, M.D. both opined that Appellant suffers from paranoid schizophrenia and schizoaffective disorder. In her report, Dr. Syed indicated that Appellant:

is paranoid, delusional, and grandiose. He believes he is telepathic and

his mind projecting thought broadcasting.  He believes his wife "Nicole" was kidnapped by MHMR and they amputated her three fingers. [Appellant] stopped taking his medications and has poor insight and judgment.  He has been calling APS and the Chief of the Fire Department and leaving messages that are delusional in nature.

Based on her evaluation of Appellant, Dr. Syed determined that he is suffering from severe and abnormal emotional or physical distress and substantial mental or physical deterioration of his ability to function independently.  She also noted that Appellant presents a substantial risk of serious harm to himself or others if not immediately restrained.

Dr. Beatty testified at trial that Appellant's illness has gotten worse in the last year or so.  Dr. Beatty stated:

[Appellant] is likely to get himself hurt in the sense of being arrested.  He is a danger to others, in that he is very disruptive to his caregivers, very discourteous.  He curses them.  He has said that his roommate is trying to poison him, and that could conceivably lead to a violent confrontation. He has pestered one particular individual, woman, to the degree that her husband has said that he has a gun and he will shoot him if he continues.

Dr. Beatty also testified that he does not believe that Appellant can provide for his basic needs without supervision or assistance.  According to Dr. Beatty, Appellant does not believe that he is ill and, as such, refuses to control himself or take any medication.  In his report dated August 31, 2011, Dr. Beatty noted the following:  "Patient [Appellant] has the psychotic delusion that he has a wife and daughter who are repeatedly kidnapped, requiring him to make frantic phone calls to the FBI, Fire Chief, Police, MHMR, DHS Austin, ect. [sic].  He cannot or will not stop this and does not agree to take recommended medications."

On cross-examination, Dr. Beatty admitted that Appellant has not taken any direct action to harm others or himself. Dr. Beatty also acknowledged that he is not aware of Appellant engaging in violent confrontations. On re-direct, Dr. Beatty recalled an incident where Appellant harassed a television-news reporter in Dallas, which resulted in Appellant's arrest and incarceration for forty-five days. Dr. Beatty believed this to be an overt act demonstrating Appellant's mental illness.

The State also presented testimony from caseworkers at Pecan Valley. Becky Phillips, a care coordinator at Pecan Valley, recalled an incident where Appellant stalked a nurse in Weatherford. And based on her interactions with Appellant, Phillips believes that Appellant will be harmed or will harm others if he is not moved from his current placement. Phillips also testified that she does not know if Appellant has any family members, and she recounted that Appellant has been hospitalized twenty-eight times in the last thirty-three years. Finally, she thought that Appellant's mental or physical condition had deteriorated to the point that he cannot function independently.

David Collier, a case manager at Pecan Valley, testified that he has closely monitored Appellant's progress. According to Collier, Appellant's condition has deteriorated to include the following:

> Belligerence, agitation, insulting to just about everyone including myself [Collier] and other staff, neighbors. I will say he's never been physically aggressive toward anyone although he will rare up as if he were wanting to attack someone, but I've never known him to actually strike or hit anyone. But he is verbally aggressive on frequent occasions.

Collier also described that Appellant has unusual preoccupations with sex and torture. Appellant has acknowledged that he has engaged in bestiality in the past and has

alleged that he is frequently anally raped in his sleep, though medical evaluations do not support Appellant's rape allegations. Moreover, Collier has heard Appellant talk about "hurting someone, stabbing, killing, all these kinds of things, but I don't know whether or not he would ever actually act on them." Further, Collier has observed Appellant be "very aggressive and threatening toward" a previous roommate. Collier also stated that "Nicole" does not exist and speculated that Appellant's delusions about "Nicole" may pertain to a previous caseworker that he was fond of. In addition, Collier recalled that Appellant has been arrested for making a terroristic threat against a church in North Carolina that he believed to be sheltering "Nicole." Appellant has also spent time in jail in Johnson and Collin Counties. Furthermore, Appellant repeatedly calls 911 and various governmental agencies to report the alleged abduction of "Nicole."

On cross-examination, Collier admitted that Appellant can shop for food at Wal-Mart and use public transportation by himself. Collier also admitted that he has never seen Appellant hit anyone despite the above-mentioned verbal aggression and that Appellant has never harmed himself or attempted suicide.

Sharon Scott, a community-support specialist at Pecan Valley who has worked with Appellant, stated that Appellant threatened to kill his previous roommate and that Appellant regularly refuses to take his medications because they interfere with his ability to transmit his thoughts.

Appellant testified on his own behalf and indicated that he believes that the staff at Pecan Valley has abducted "Nicole" and his daughter Josephine and that the staff amputated "Nicole's" fingers and Josephine's arms and left leg. Appellant

acknowledged that he has been arrested in the past for stalking a store clerk with whom he attempted to be romantically involved. Appellant also acknowledged that his current roommate has tried to harm him. And finally, Appellant admitted to writing numerous letters to a "beautiful" female district attorney in Johnson County, though he explained that he thought the district attorney could help him with his case.

The jury concluded that there is clear and convincing evidence that Appellant: (1) has a "mental illness"; (2) is likely to cause serious harm to himself and others; and (3) is suffering severe and abnormal mental, emotional, or physical distress and is experiencing substantial mental or physical deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. The trial court adopted the jury's findings and signed the judgment for temporary in-patient mental-health services. The trial court also signed the order for customary administration of psychoactive medication.

Based on our review of the evidence, we conclude that the State presented clear and convincing evidence such that a reasonable factfinder could form a firm belief or conviction that Appellant has engaged in a continuing pattern of behavior that tends to confirm the likelihood of serious harm to Appellant or others. Although the record does not reflect that Appellant has attempted to harm himself, the State presented evidence of Appellant's threatening nature, Appellant's delusions and preoccupation with sex and torture, and Appellant's tendency to stalk and harass females—all of which constitute a continuing pattern of behavior that tends to confirm the likelihood of serious harm to Appellant and others. *See G.H. v. State*, 94 S.W.3d 115, 117 (Tex. App.—

Houston [14th Dist.] 2002, no pet.) ("Texas law does not require relatives or physicians of the mentally ill (or the courts) to stand idly by until serious harm occurs. Indeed, the purpose of temporary commitment is to avoid just such harm."). And in further support of our conclusion, the State presented evidence that at least one person—the husband of a Pecan Valley nurse—has stated that he will shoot Appellant if Appellant continues to stalk his wife.

Furthermore, Dr. Beatty identified at least one recent overt act—Appellant's harassment of a Dallas television reporter—that resulted in Appellant's incarceration and supports temporary, involuntary commitment. *See State v. K.E.W.*, 315 S.W.3d 16, 24 (Tex. 2010) ("In sum, the statute requires evidence of a recent act by the proposed patient, either physical or verbal, that can be objectively perceived and that is to some degree probative of a finding that serious harm to others is probable if the person is not treated. The overt act itself need not be of such character that it alone would support a finding of probable serious harm to others."). Accordingly, we hold that the evidence supporting the trial court judgment for temporary in-patient mental-health services is legally and factually sufficient. Appellant's first issue is overruled.

Appellant's second issue pertaining to the trial court's order to administer psychoactive medication is premised on the resolution of his first issue. Appellant argues that the trial court's order to administer psychoactive medication is not supported by legally and factually sufficient evidence because the judgment of involuntary commitment is not supported by legally and factually sufficient evidence. *See J.M. v. State*, 178 S.W.3d 185, 197 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("In

the absence of a valid order for temporary or extended mental[-]health services, the order authorizing the administration of psychoactive medication is not authorized by statute.") (citing TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (West 2010)). Because we have concluded that the trial court's judgment of involuntary commitment is supported by legally and factually sufficient evidence, we overrule Appellant's second issue.

Having overruled both of Appellant's issues, we affirm the trial court's judgment of commitment and order to administer psychoactive mediation.


REX D. DAVIS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed September 13, 2012
[CV06]