**The STATE of Texas for the Best
Interest and Protection of
R.P.**

No. 08–13–00180–CV.

Court of Appeals of Texas,
El Paso.

May 30, 2014.

Angelina Lugo, El Paso, for Appellant.

Jo Anne Bernal, County Attorney, El Paso, for Appellee.

Before McCLURE, C.J., RIVERA, and RODRIGUEZ, JJ.

## OPINION

ANN CRAWFORD McCLURE, Chief Justice.

Appellant, R.P., appeals a judgment ordering temporary inpatient mental health services. Finding the evidence is legally and factually sufficient to support the judgment, we affirm.

## FACTUAL SUMMARY

On May 30, 2013, Appellant, who is sixty-five years of age and homeless, was transported by ambulance from a park on the outskirts of El Paso to the emergency room at University Medical Center of El Paso because he was complaining of heart palpitations. The following day, Silvina Tonarelli, M.D. filed an application for court-ordered mental health services and a certificate of medical examination. Dr. Tonarelli's diagnosis of Appellant's physical and mental condition stated: "schizo-

phrenia, undifferentiated type; non-adherent to treatment; and cognitive disorder NOS." Dr. Tonarelli's certificate related that Appellant was living in the street, disheveled, and losing weight because he was not eating; he was disorganized, non-adherent to treatment, and complained about hearing voices; Appellant's speech was extremely tongue-tied and he was unable to take care of himself. Dr. Tonarelli reported that Appellant had previously been voluntarily admitted to the El Paso Psychiatric Center (EPPC) on April 30, 2013, but he left against medical advice. Dr. Tonarelli recommended that Appellant receive in-patient psychiatric treatment.

On May 31, 2013, the probate court entered an order of protective custody and Appellant was subsequently admitted to EPPC. Appellant waived the probable cause hearing and the probate court set the final hearing on the application for court-ordered mental health services for June 6, 2013.

Walter Aeschbach, M.D. filed a certificate of medical examination on June 5, 2013. Dr. Aeschbach diagnosed Appellant as having schizophrenic disorder, undifferentiated type, possibly some cognitive impairment, and malnutrition. Dr. Aeschbach noted that Appellant is severely malnourished with a BMI (body mass index) of 16. In his opinion, Appellant is mentally ill and presents a substantial risk of causing serious harm to himself or others if not immediately restrained. Dr. Aeschbach supported his opinion by relating that Appellant, because of severely disorganized thinking, had been unable to organize his activity to provide for his safety and to get adequate water and food or otherwise provide for his basic needs. Consequently, Appellant is at risk of getting lost and dying of dehydration or starvation, and without treatment, he is at high risk of his mental disorder getting worse.

Dr. Aeschbach testified at the hearing on June 6, 2013. He adhered to his diagnosis of schizophrenic disorder, undifferentiated type, but clarified that there was a question whether Appellant also had a cognitive disorder and he believed it was likely Appellant was just extremely disorganized as a result of his mental illness. Dr. Aeschbach concluded Appellant presented a danger to himself due to his disorganized thinking and lack of clear goals. As an example, Dr. Aeschbach explained how Appellant came to be found on the outskirts of El Paso. Appellant told Dr. Aeschbach he began walking because he wanted to see the desert and then go to Brownsville. Appellant walked but became lost and he eventually came to a church where someone gave him some food. Appellant continued walking until he came to the park on the outskirts of El Paso where someone called an ambulance when Appellant complained of having heart palpitations. Dr. Aeschbach noted that this behavior endangered Appellant because he could become ill or even die due to dehydration and lack of food. Further, Appellant's physical condition and BMI of 16 increased this risk.

Dr. Aeschbach also testified about Appellant's inability to care for himself. Appellant is unable to support himself and he has no support system. He sometimes stays at homeless shelters, but he also lives on the streets. At the time of his admission, Appellant had not bathed for approximately two weeks. Appellant did not understand that he had a mental disorder and had been contradictory with regard to whether he agreed to undergo treatment.

Dr. Aeschbach admitted on cross-examination that he had not seen Appellant do anything while in the hospital setting that presented a risk of harm to himself, but he

added that it was a protective environment. Appellant was thinking more clearly as a result of receiving treatment while in the hospital.

The trial court found that Appellant was likely to cause serious harm to himself; that he was suffering severe and abnormal mental, emotional, or physical distress and was experiencing substantial mental or physical deterioration of the ability to function independently; and that he was incapable of making a rational and informed decision as to whether or not to submit to treatment. Consequently, the trial court committed Appellant to EPCC for a period not to exceed 90 days. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue on appeal, Appellant challenges the legal and factual sufficiency of the evidence supporting the court-ordered temporary inpatient mental health services because there is no evidence of recent overt acts or a continuing pattern of behavior showing that Appellant, as a result of mental illness: (1) was likely to cause serious harm to himself; (2) that Appellant was suffering severe and abnormal mental, emotional, or physical distress or substantial mental or physical deterioration of his ability to function independently; or (3) that he was not able to make a rational and informed decision as to whether to submit for treatment. Section 574.034 of the Texas Health and Safety Code, which is entitled "Order for Temporary Mental Health Services," provides, in relevant part:

(a) The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034 (West Supp.2013). If the judge or jury finds that the patient meets the commitment criteria in subsection (a), the judge or jury must specify which criterion listed in Subsection (a)(2) forms the basis for the decision. TEX. HEALTH & SAFETY CODE ANN. § 574.034(c). The statute further provides that:

(d) To be clear and convincing under Subsection (a), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:

(1) the likelihood of serious harm to the proposed patient or others; or

(2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(d).

*Standards of Review*

The burden of proof in this case is clear and convincing evidence. *See* Tex. Health & Safety Code Ann. § 574.034(a). Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010), quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979). This intermediate standard falls between the preponderance of evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *Addington*, 588 S.W.2d at 570. Because the State's burden of proof is heightened, we must apply a heightened standard of review to sufficiency of the evidence challenges. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002).

When reviewing the legal sufficiency of the evidence in a case requiring proof by clear and convincing evidence, we determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction as to the truth of the allegations sought to be established. *State v. K.E.W.*, 315 S.W.3d at 20. We review all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *Id.* We resolve disputed fact questions in favor of the finding if a reasonable fact finder could have done so, and we disregard all contrary evidence unless a reasonable fact finder could not have done so. *Id.*; *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005).

In determining whether the evidence is factually sufficient to establish the required elements by clear and convincing evidence, we must determine whether the evidence permits a fact finder to reasonably form a firm belief or conviction about the truth of the State's allegations. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002); *In re C.H.*, 89 S.W.3d at 25. In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. In contrast with legal sufficiency review, our focus is not simply upon the undisputed evidence that supports the verdict, but the disputed evidence as well. *In re J.F.C.*, 96 S.W.3d at 266. We must consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

*Section 574.034(a)(2)(A)*

The probate court ordered temporary inpatient mental health services based on its findings that: Appellant is mentally ill [§ 574.034(a)(1) ]; and that as a result of that mental illness, Appellant is likely to cause serious harm to himself [§ 574.034(a)(2)(A) ]. Appellant does not challenge the evidence supporting the probate court's finding that he is mentally ill. He instead attacks the evidence supporting the finding that he was likely to cause serious harm to himself as a result of mental illness.

To be clear and convincing, the evidence had to include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of

serious harm to Appellant. Tex. Health & Safety Code Ann. § 574.034(d). The threat of harm must be substantial and based on actual dangerous behavior manifested by some overt act or threats in the recent past. *State ex rel. S.W.*, 356 S.W.3d 576, 579 (Tex.App.-Texarkana 2011, no pet.); *State ex rel. K.D.C.*, 78 S.W.3d 543, 547 (Tex.App.-Amarillo 2002, no pet.). However, overt acts include both physical acts and verbal statements. *State v. K.E.W.*, 315 S.W.3d at 21–22. A recent overt act by a proposed patient "tends to confirm" that the patient poses a likelihood of serious harm to himself if the overt act is to some degree probative of a finding that serious harm is probable, even though the overt act itself may not be dangerous. *Id.*, 315 S.W.3d at 23–24.

■ We begin by examining the evidence under the legal sufficiency standard. Dr. Aeschbach testified that Appellant's mental illness causes him to have disorganized thinking. As a result of this mental illness and disorganized thinking, Appellant was unable to make the decisions necessary to ensure his own safety. Approximately one week before the hearing, Appellant wandered off on foot because he wanted to see the desert and perhaps travel to Brownsville but he did not take any food or water with him. Appellant walked to a park on the outskirts of El Paso but he did not know where he was or what direction he had traveled. Appellant began experiencing heart palpitations and was transported by ambulance to the hospital. Dr. Aeschbach explained that Appellant was at risk of suffering dehydration, starvation, and heat stroke, and the risk of this type of physical harm is increased because Appellant is extremely underweight and malnourished. In Dr. Aeschbach's opinion, in-patient treatment was the only safe alternative for Appellant at the time of the hearing, and if Appellant was released, there was a risk that he would walk away and get lost or suffer harm as the result of dehydration and starvation.

Appellant argues that Dr. Aeschbach's conclusion that Appellant is at risk of suffering a heart attack, dehydration or heat stroke while wandering is unfounded and refers to a hypothetical scenario in the future. Citing *State ex rel. K.D.C.*, 78 S.W.3d 543 (Tex.App.-Amarillo 2002, no pet.), he also argues that Dr. Aeschbach failed to testify regarding any overt act or pattern of behavior supporting his conclusion that serious harm to Appellant is probable. In *K.D.C.* a psychiatrist testified that the patient posed a threat of serious harm to herself in the sense that she would be unable to function in the community due to her lack of organization and inability to conduct her daily affairs, but he did not identify any specific overt act or pattern of behavior supporting his conclusion. *Id.* at 548. Consequently, the Seventh Court of Appeals found the evidence was legally insufficient. *Id.* at 550–51. The instant case is distinguishable because Dr. Aeschbach based his opinion on the events leading to Appellant being taken to a hospital emergency room. Appellant had wandered into the desert a few days before the hearing and it resulted in him being transported to a hospital. Dr. Aeschbach explained that Appellant began walking simply because he wanted to see the desert and he did not take food or water due to his disorganized thinking. The probate court could have reasonably found that walking into the desert without food or water is an overt act which tends to confirm that Appellant poses a likelihood of serious harm to himself. We conclude that the evidence is sufficient to produce in the mind of the probate court a firm belief or conviction that Appellant, as a result of his mental illness, is likely to cause serious harm to himself.

Appellant also challenges the factual sufficiency of the evidence supporting this same finding. Appellant is correct that Dr. Aeschbach admitted during cross-examination that Appellant was thinking more clearly at the time of the hearing and Appellant had not done anything in the hospital setting which showed Appellant is likely to harm himself, but Dr. Aeschbach emphasized this was the case because Appellant was receiving treatment in a protective environment. In his opinion, inpatient treatment was the only safe alternative for Appellant at the time of the hearing, and if Appellant was released, there was a risk that he would walk away and get lost or suffer harm as the result of dehydration and starvation. It was the probate court's task to weigh the evidence presented by the parties and resolve any conflicts in the evidence. We conclude that the disputed evidence is not such that the probate court could not have resolved it in favor of the challenged finding. The evidence is legally and factually sufficient to support the probate court's finding that Appellant, as a result of mental illness, is likely to cause serious harm to himself. The trial court's judgment is supportable based upon the court's findings that Appellant is mentally ill and he is likely to harm himself as a result of that mental illness. Nevertheless, we will review the legal and factual sufficiency of the evidence supporting the court's findings under Section 574.034(a)(2)(C).

### Section 574.034(a)(2)(C)

The probate court ordered temporary inpatient mental health services based on its findings that: Appellant is mentally ill [§ 574.034(a)(1) ]; and Appellant is suffering severe and abnormal mental, emotional, or physical distress [§ 574.034(a)(2)(C)(i) ], is experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety [§ 574.034(a)(2)(C)(ii) ], and is unable to make a rational and informed decision as to whether or not to submit to treatment [§ 574.034(a)(2)(C)(iii) ]. As noted above, Appellant has not challenged the evidence supporting the probate court's finding that he is mentally ill. Likewise, he has not raised any argument regarding the probate court's finding under Section 574.034(a)(2)(i). Accordingly, we will limit our review to the legal and factual sufficiency of the evidence supporting the probate court's findings under Section 574.034(a)(2)(C)(ii) and (iii).

### Deterioration of Ability to Function Independently

We will first address the legal sufficiency of the evidence supporting the probate court's finding that Appellant was experiencing substantial mental or physical deterioration of his ability to function independently. See TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C)(ii). In conducting this review, we keep in mind that evidence that a person has a mental illness or is exhibiting psychotic behavior alone is insufficient to justify commitment on the grounds of mental distress and the deterioration of the ability to function independently. State ex rel. S.W., 356 S.W.3d at 579; T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.-Dallas 1999, no pet.). The overt act requirement also applies to the deterioration of the proposed patient's ability to function. See TEX. HEALTH & SAFETY CODE ANN. § 574.034(d)(2).

Citing State ex rel. K.D.C., 78 S.W.3d 543 (Tex.App.-Amarillo 2002, no pet.), Appellant again argues that Dr. Aeschbach failed to identify any overt act or pattern

of behavior supporting his conclusion that Appellant's ability to function independently has deteriorated. Dr. Aeschbach emphasized in his testimony that Appellant's mental illness causes him to have disorganized thinking, and as a result of his mental illness, Appellant is unable to support himself and is homeless. He sometimes resides in homeless shelters but also lives on the streets. Appellant is malnourished and extremely underweight. As discussed above, Appellant walked into the desert without any food or water and without any plan to provide for his basic needs, including shelter and safety. Appellant's indigence would certainly make it difficult for him to have food or water readily available, but there is evidence he had voluntarily left a homeless shelter before going on this journey. Dr. Aeschbach explained that Appellant could not provide for his basic needs of food, water, and safety as a direct result of severely disorganized thinking. We conclude that the evidence is sufficient to produce in the mind of the probate court a firm belief or conviction that Appellant, as a result of his mental illness, was experiencing substantial mental or physical deterioration of his ability to function independently and this was exhibited by Appellant's inability to provide for his basic needs, including food, clothing, health, or safety.

Appellant also challenges the factual sufficiency of the evidence supporting this finding. It is undisputed that Appellant is indigent, but the probate court heard expert testimony that Appellant's inability to provide for his basic needs is caused by his disorganized thinking and inability to plan. It was the task of the probate court to evaluate the evidence and determine the weight it should be given. We conclude that the evidence is factually sufficient to prove by clear and convincing evidence that Appellant was experiencing substantial mental or physical deterioration of his ability to function independently.

### Rational and Informed Decision Regarding Treatment

 Appellant has also challenged the legal and factual sufficiency of the evidence supporting the probate court's finding that Appellant was not able to make a rational and informed decision as to whether to submit for treatment. *See* Tex. Health & Safety Code Ann. § 574.034(a)(2)(C)(iii). He argues that there are no overt acts supporting this finding, but Section 574.034(d) applies only to (1) the likelihood of serious harm to the proposed patient or others, or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. *See* Tex. Health & Safety Code Ann. § 574.034(d). Therefore, we will review the finding under the ordinary legal and factual sufficiency standards applicable when the burden of proof is clear and convincing evidence.

Dr. Aeschbach testified that Appellant's thinking is extremely disorganized and he typically did not answer the questions put to him. He described how Appellant can give "fairly adequate answers" to questions in a brief conversation, but Appellant would begin to "lose it" after a few minutes and would not "make any sense at all." At this point, Appellant would not answer the questions and would talk about something completely different. When Dr. Aeschbach tried to determine whether Appellant would agree to treatment, Appellant vacillated between agreement and refusal. Of particular significance to this issue, there is evidence Appellant does not understand that he has a mental disorder. The evidence is legally sufficient to permit the probate court to find by clear and convincing evidence that Appellant was not able to make a rational and informed deci-

sion whether or not to submit for treatment.

With regard to the factual sufficiency of the evidence on this issue, Appellant is correct there is evidence that Appellant was compliant and taking his medication at the time of the hearing. Evidence that Appellant is voluntarily taking his medication in the hospital setting does not demonstrate that he has the ability to make a rational and informed decision whether or not to submit to treatment. We conclude that the evidence is factually sufficient to support the probate court's finding on this issue. For these reasons, we overrule Issue One and affirm the judgment of the probate court ordering temporary inpatient mental health services.