

IN THE
TENTH COURT OF APPEALS

No. 10-15-00009-CV

EX PARTE T.L.M.

From the 54th District Court
McLennan County, Texas
Trial Court No. 2014-1146-C2

MEMORANDUM OPINION

Appellant T.L.M. was charged by indictment with the felony offense of burglary of a habitation with intent to commit assault that was allegedly committed on April 7, 2014. The charge was enhanced to the habitual offender punishment range with allegations of prior convictions for aggravated assault with a deadly weapon and arson.

By letter of April 29, 2014, the trial court requested Dr. W. Lee Carter to examine Appellant after his counsel filed a motion suggesting incompetency. Dr. Carter provided the trial court his psychological evaluation, which was done on May 19, 2014.

Dr. Carter's report noted that Appellant's criminal history dated back to 1993 and included incidents of aggravated assault with a deadly weapon, injury to a

child/elderly/disabled person, terroristic threat, arson, burglary of a habitation, criminal mischief, and possession of a controlled substance. Appellant's social/family history reflected that he had been declared medically disabled and that he received outpatient psychiatric services through MHMR. In his interview with Dr. Carter, Appellant made numerous outlandish or grandiose claims, such as living in a mansion in Austin, having lived in a number of places around the world, having a wealthy wife in China, that he owned Oak Farms Milk, and that he was trained to be a police officer, a doctor, a lawyer, a teacher, and a social worker. Appellant was aware that he had been diagnosed with paranoid schizophrenia. He denied hearing voices in his head but claimed to have special powers, to have fathered "27 children by 28 different women," and to have played professional football. Dr. Carter noted that Appellant lacked understanding of personal and interpersonal dynamics. Also, Appellant's performance on intelligence testing suggested mild mental retardation, which was likely affected by his mental illness. Dr. Carter concluded that Appellant was in the low normal range of intelligence.

Dr. Carter's clinical impressions were that Appellant lived in a psychologically confined world with multiple indicators of paranoid schizophrenia. Appellant could become verbally aggressive and irrational, but this could be easy to manage when Appellant was in a self-contained world. Although Appellant understood that he was mentally ill, he lacked self-awareness and therefore did little to improve his plight. Appellant's history showed that he has a capacity for strong aggression and non-compliance with psychiatric treatment, and that he was at risk for repeating troubled patterns.

Because of his concern that Appellant lacked the capacity to meaningfully discuss the facts of his case, confer intelligently with his counsel, understand potential plea options, or testify on his own behalf, Dr. Carter concluded that Appellant was not competent to stand trial, and proposed that Appellant needed inpatient psychiatric hospitalization.

Based on Dr. Carter's evaluation, the trial court entered an agreed order on August 1, 2014 that found Appellant to be incompetent, and committed him to Austin State Hospital for a period not to exceed 120 days.

Section 574.034(a) of the Health and Safety Code provides that a trial court may order temporary inpatient mental-health services if it finds by clear and convincing evidence that the patient is mentally ill and at least one of three criteria results from that mental illness. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West Supp. 2014). Two of the alternative criteria are that the patient is likely to cause serious harm to himself or others. *Id.* § 574.034(a)(2)(A)-(B). The third alternative criterion requires clear and convincing evidence that: (1) Appellant is suffering severe and abnormal mental, emotional, or physical distress; (2) Appellant's mental or physical deterioration impacts his ability to function independently, "which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for [his] basic needs, including food, clothing, health, or safety"; and (3) Appellant is unable to make rational and informed decisions as to whether or not to submit to treatment. *Id.* § 574.034(a)(2)(C).

Dr. Crispin Juguilon, a staff psychiatrist at Austin State Hospital, advised the court in a letter dated December 3, 2014 that, in the hospital staff's opinion, Appellant remained

incompetent but they did not believe that he met the criteria for a civil commitment because he was not currently showing any indications of immediate dangerousness to himself or others. Based on that letter, the trial court entered orders for Appellant to be examined by two psychiatrists, Dr. Stephen Mark and Dr. Allen Hueston, to determine Appellant's eligibility for civil commitment.

On December 24, 2014, Dr. Hueston examined Appellant, and his written report and certification were provided to the trial court. On the basis of his examination, Dr. Hueston concluded that Appellant "remains psychotic on a therapeutic dose of antipsychotic medications. He is responding to hallucinations and internal stimuli and is likely to reoffend if released to the general public. Further hospitalization is indicated." Dr. Hueston opined that Appellant was likely to cause serious harm to others; he noted: "The patient is experiencing command hallucinations directing him to harm others."

Dr. Mark examined Appellant on January 7, 2015, and his written report and certification were provided to the trial court. From his examination, Dr. Mark concluded that Appellant was

> mentally ill and because of that illness is likely to cause serious harm to others and is suffering severe and abnormal mental emotional or physical distress, is experiencing substantial mental deterioration of ability to function independently and is unable to make a consistent rational and informed decision as to whether or not to submit to treatment.

Dr. Mark recommended extended psychiatric hospitalization for further psychiatric treatment.

On January 9, 2015, the trial court held a hearing to consider an extended court-ordered civil commitment. Appellant's counsel stipulated to the trial court's taking judicial notice of the certifications made by Dr. Carter, Dr. Mark, and Dr. Hueston.

Dr. Mark testified that he first became familiar with Appellant in 1996 when he performed a competency evaluation on him at that time. For the instant case, Dr. Mark said that he has diagnosed Appellant as being mentally ill, suffering from schizoaffective disorder, the symptoms of which include agitation, delusions, paranoia, mood lowering, and irritability. He testified that, because of this illness, Appellant was likely to cause harm to himself or others if he was not treated. Appellant's ability to function independently was affected; he could probably not provide for his basic needs without treatment, nor could he on his own make rational and informed decisions regarding his treatment.

When asked about recent overt acts or continued patterns of behavior by Appellant that contributed to his opinion, Dr. Mark first noted Appellant's long history of offenses associated with violence. Dr. Mark then related that, upon meeting with Appellant two days before, Appellant "tried to be cooperative and answer questions, but at times, he'd get very persistent about expressing a thought to the point of losing track what the question was and getting agitated, uh, at times where, uh, caught my eye enough where I stopped the line of questioning so he wouldn't just get more and more agitated." Dr. Mark described this agitation as Appellant having a "raised voice, his eyes going wide, looking like one could just stand up from the chair and get belligerent." Dr.

Mark opined that, if he had done nothing to stop the continued agitation, Appellant would have become dangerous.

After reviewing Appellant's recent treatment history and current medication at the Austin State Hospital, Dr. Mark's conclusions were that Appellant remained incompetent to stand trial and that Appellant was a danger to himself and others. He recommended commitment to an inpatient care facility, and specifically the North Texas State Hospital in Vernon, because it was the most secure facility available and Appellant was potentially dangerous to himself and others. In making this recommendation, Dr. Mark considered safety to be the main concern.

On cross-examination, Dr. Mark agreed that Appellant had improved since being committed to Austin State Hospital and that he had exhibited good behavior in jail. While at Austin, Appellant's behavior had improved over time, with less agitation and inappropriateness being displayed over the course of his treatment. To Dr. Mark's knowledge, Appellant had not harmed anyone within the previous year.

Dr. Hueston testified next, stating that he has known of Appellant since November of 2013 in his capacity on MHMR staff. Appellant had been taking medication for schizophrenia but still had a history of not complying with the treatment schedule. Dr. Hueston had diagnosed Appellant with schizophrenia. Dr. Hueston had no indications that Appellant would harm himself, but he did believe that there was a danger that he would harm others. Dr. Hueston saw no indications that Appellant could care for himself, and did not think he could function independently in everyday life.

When asked if Appellant was able to make rational and informed decisions about whether or not to submit to treatment on his own, Dr. Hueston explained that Appellant was not actually refusing treatment but that, because of his inability to focus and follow through with tasks, he was unable to comply with a treatment regimen on his own. Dr. Hueston described Appellant as "very psychotic." Asked about his conclusions that Appellant would be dangerous to others or under mental or emotional distress, Dr. Hueston explained that Appellant "responds to his hallucinations."

> He has command-type hallucinations. So if the command that comes to him is, I'm the devil, he's gonna come across that desk and assault me. And that's - - what he told me is he can't resist those commands. So if the voices tell him, You're the devil. He's coming after you. Okay? And I mean … he believes these - - the thoughts he has. He believes them. And he can't - - what he told me when I examined him is he cannot resist the thoughts. He has no - - there's no break for him. He has - - he responds to the thoughts.

Dr. Hueston's recommended treatment for Appellant was in-patient commitment because he would not be safe outside of an institution.

On cross-examination, Dr. Hueston testified that he was not aware of specific acts by Appellant while at the Austin State Hospital or while in jail, or during his examination of Appellant. Dr. Hueston explained, however, that Appellant "does get agitated real easy and you have to be very cautious in interacting with him."

The State's final witness was Mark Baker, a program manager with MHMR, who testified that he and the program team began working with Appellant in November of 2013. Baker said that Appellant was supposed to take medications every day, but he was not compliant with taking them as prescribed. When Appellant was not taking his medication, he would become agitated and aggressive. At the time of the instant offense,

Appellant was under the MHMR regimen, and Baker was aware of the circumstances of the instant offense. He also had personal knowledge of previous aggressive acts by Appellant.

Baker testified that, approximately a year before the hearing, Appellant was riding in a truck with him and became quite agitated regarding some delusions he was having. Baker explained that when Appellant's delusions are challenged in any way, he becomes aggressive. Baker had to stop the vehicle and verbally defuse the situation. Baker also testified about another incident in the same time period where Appellant had become aggressive toward another caseworker; Appellant chased the woman out of the house and began banging on her car window. Baker said that he believed this type of behavior would continue if Appellant was released into out-patient treatment. He explained that Appellant had already been on MHMR's most intensive service program at the time of the instant offense and that they did not have the resources to treat him in a manner that could keep him and others in the community safe. Baker said that he did not believe a person on the street, without knowledge or training, would be able to defuse a situation with Appellant, and he thus foresaw Appellant being a danger to others in the community. Baker also saw Appellant as a danger to Baker personally and to his fellow team members if Appellant were released to MHMR services. And based on his experience with Appellant, Baker did not believe that Appellant had the ability to function independently or to care for himself on his own.

On cross-examination, Baker said that he was not aware of any aggressive acts by Appellant while he was in jail or in the hospital. Asked if he had any evidence of "any

recent act or pattern to confirm a likelihood of serious harm to himself or others," Baker replied that it depended on the definition of "recent." He did say, however, that he saw a pattern that had been interrupted by Appellant's recent stays in jail and hospital facilities.

Dr. Juguilon, the staff psychiatrist at Austin State Hospital whose December 3, 2014 letter had stated that Appellant had not evidenced any indications of immediate dangerousness to himself or others, did not testify.

After the hearing, the trial court entered its order for civil-commitment placement, finding that Appellant was mentally ill and as a result was likely to cause serious harm to himself or others, and that Appellant was suffering severe and abnormal mental, emotional or physical distress, substantial mental or physical deterioration of his ability to function independently, which was exhibited by his inability to provide for his basic needs, and was unable to make a rational and informed decision as to whether to submit to treatment. This appeal followed. In his sole issue, Appellant complains that the evidence is legally and factually insufficient to support the commitment order.

Appellant first contends in his issue that the evidence supporting the trial court's involuntary-commitment order is legally and factually insufficient because the State did not present evidence of a recent overt act or a continuing pattern of behavior confirming that he poses a likelihood of causing serious harm to himself or others. Appellant also asserts that the State's evidence that he is experiencing substantial mental or physical deterioration such that he is unable to make rational and informed decisions as to whether or not to submit to treatment is legally and factually insufficient.

The burden of proof for an involuntary commitment is clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a). Clear and convincing evidence is that "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979); *see A.S. v. State*, 286 S.W.3d 69, 70 (Tex. App.—Dallas 2009, no pet.). And, because the State's burden of proof is clear and convincing evidence, we apply a heightened standard of review. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

In reviewing a legal-sufficiency claim, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing a factual-sufficiency claim, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a factfinder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Id.*

We first note that Appellant does not dispute that he is mentally ill; his brief states that the State "presented ample testimony regarding [Appellant's] extreme mental illness." Thus, for the State to satisfy its burden of clear and convincing evidence, section 574.034 states that the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the patient *or* others; *or* (2) the patient's distress and the deterioration of the patient's ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). The recent overt act or continuing pattern of behavior must relate to the

criteria on which the judgment is based. *T.G. v. State*, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.). The expert's opinions and recommendations must be supported by a showing of the factual bases on which they are grounded. *Id.*

Based on our review of the evidence, we conclude that the State presented clear and convincing evidence such that a reasonable factfinder could form a firm belief or conviction that Appellant has engaged in a continuing pattern of behavior that tends to confirm the likelihood that his mental illness would cause serious harm to others. The State presented evidence that Appellant experiences command-type hallucination that he cannot resist, along with Appellant's history of violent crime dating back to 1993, his delusions and lack of self-awareness, and his tendency to become agitated—all of which constitute a continuing pattern of behavior that tends to confirm the likelihood of serious harm to others. *See G.H. v. State*, 94 S.W.3d 115, 117 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("Texas law does not require relatives or physicians of the mentally ill (or the courts) to stand idly by until serious harm occurs. Indeed, the purpose of temporary commitment is to avoid just such harm.").

Furthermore, Baker testified to two recent overt acts before Appellant's commitment. Without citing authority, Appellant contends that these acts were not recent—they were more than ten months before the hearing—and that there were no overt acts once Appellant was jailed and then hospitalized. We agree with the State that, the trial court, as factfinder, was not required to disregard those acts because an intervening hospitalization had occurred in which there were no overt acts.

And finally, Dr. Mark testified that, just two days before the hearing, Appellant became agitated, describing him as having a "raised voice, his eyes going wide, looking like one could just stand up from the chair and get belligerent." Dr. Mark testified that that, if he had done nothing to stop the continued agitation, in his opinion Appellant would have become dangerous.

Because the evidence is legally and factually sufficient to support the finding that Appellant's mental illness is likely to cause serious harm to others, we need not address the other part of his issue on the sufficiency of the evidence on the third alternative criterion. We overrule Appellant's sole issue and affirm the trial court's order.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 31, 2015
[CV06]

