

## NUMBER 13-22-00501-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

### THE STATE OF TEXAS
### FOR THE BEST INTEREST AND PROTECTION OF C.G.

**On appeal from the Probate Court
of Hidalgo County, Texas.**

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Tijerina
Memorandum Opinion by Justice Benavides**

Appellant C.G. appeals the trial court's order committing C.G. for temporary in-patient mental health services and its order to administer psychoactive medication to C.G. By two issues that we examine together, C.G. argues the evidence is legally and factually insufficient to support both orders. We affirm.

### I.    BACKGROUND

On September 28, 2022, Deborah Ortega, the court liaison for the Rio Grande

State Center, a mental health facility where C.G. was already admitted,[1] filed an application for temporary commitment for mental illness, requesting that the court commit C.G. to an appropriate mental health facility "for a period not to exceed 45 days or 90 days if the court finds that the longer period is necessary." In her application for emergency apprehension and detention, Ortega stated she believed C.G. presented a substantial risk to others because she "hit her sister and she expressed homicidal ideation." That same day, Ovidiu Dulgheru, M.D., filed a physician's certification of medical examination for temporary commitment. In his certification, Dr. Dulgheru explained that C.G. was diagnosed with schizoaffective disorder, bipolar type. He also attested that C.G. was likely to cause serious harm to others without treatment because "she hit her sister and she expressed homicidal intention."

On October 7, 2022, Dr. Dulgheru, on behalf of the State of Texas, also requested an order to administer psychoactive medication to C.G. Gilbert Silva, M.D., filed a second physician's certification of medical examination for temporary commitment in this case that same day. In this certification, Dr. Silva alleged that C.G. was diagnosed with schizoaffective disorder, bipolar type, and that she was likely to cause serious harm to others based on her recent violence towards her sister and her history of violence towards her family in general.

A hearing on both the application for temporary commitment and the motion to administer psychoactive medication commenced on October 11, 2022. The State argued in favor of both motions. At the beginning of the hearing, the trial court took judicial notice

---

[1] The record indicates that C.G. was admitted to the Rio Grande State Center on September 26, 2022.

of "all contents of the court's file, including the second physician's certificate filed on October 7th of 2022." C.G. filed a written stipulation of evidence prior to the hearing wherein she "consent[ed] to the introduction of the certificate(s) of medical examination for mental illness which, under the Texas Mental Health Code § 546.034(f) constitute(s) competent medical or psychiatric testimony."

The State called Dr. Dulgheru as its only witness, and the parties stipulated to his qualifications. Dr. Dulgheru testified that he was the main attending physician on C.G.'s case and that she had been diagnosed with "schi[]zoaffective disorder, bipolar type." According to Dr. Dulgheru, C.G. had been with the hospital "many, many times," and this admission was "almost a copy and paste from the past admission." He explained that C.G. had become noncompliant with her prescribed medication, "started to become more responsive to internal stimulation, and [started] becoming more aggressive." Dr. Dulgheru testified that C.G. "has a history of being in jail, due to her assaulting her family," and "this time[,] she started accusing her family . . . [of] kill[ing] her son—and actually[,] she never had a son—and she doesn't believe that her family is her real family." Dr. Dulgheru testified that when C.G. does not follow her medication regimen, "she has these delusions, and the problem is she acts upon [them]." According to Dr. Dulgheru, C.G. "feels like she's defending herself against this family," and recently "hit her sister . . . with a bottle of water," which led to the family calling for help. He testified that "[s]he's usually not aggressive to staff or other people in the hospital," but "the main harm" C.G. poses "is towards her family."

Dr. Dulgheru also testified that C.G. cannot make a rational and informed decision

3

as to whether to submit to treatment "because she doesn't believe she has any problem, and that's usually when she's coming in, that's the base line for her when she's sick." Concerning the medication he sought in his application for the administration of psychoactive medicine, Dr. Dulgheru testified that there were no less restrictive means of treatment, and without the medication sought in his application for the administration of psychoactive medication, "there's no chance that she will improve."

That same day, the court ordered C.G.'s commitment on an involuntary in-patient basis to the Rio Grande State Center for a period of forty-five days. The court found that C.G. was likely to cause serious harm to others and that she would, if not treated, continue to experience a deterioration of her ability to function independently. The trial court also signed its order permitting the mental health facility to administer the psychoactive medication requested by Dr. Dulgheru. The court found that this was in C.G.'s best interest. The order for psychoactive medication administration stated that it would expire "on the expiration or termination date of the order for competency restoration treatment."

This appeal followed. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.070(a), 574.108(a).

## II.     APPLICABLE LAW & STANDARD OF REVIEW

### A.     Order for Temporary Inpatient Mental Health Services

A court may order temporary inpatient mental health services only if the court finds, from clear and convincing evidence, that:

(1)     the proposed patient is a person with mental illness; and

(2)     as a result of that mental illness the proposed patient:

4

A.    is likely to cause serious harm to the proposed patient;

B.    is likely to cause serious harm to others; or

C.    is:

    i.    suffering severe and abnormal mental, emotional, or physical distress;

    ii.   experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

    iii.  unable to make a rational and informed decision as to whether or not to submit to treatment.

*Id.* § 574.034(a). The evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. *Id.* § 574.034(d). The recent overt act or continuing pattern of behavior shown by the State must also relate to the criterion on which the judgment is based. *In re C.O.*, 65 S.W.3d 175, 181 (Tex. App.—Tyler 2001, no pet.).

**B.    Order for Administration of Psychoactive Medication**

If the court orders the proposed patient to receive inpatient mental health services, it may also issue an order authorizing the administration of one or more classes of psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1). The court must find by clear and convincing evidence that the patient lacks the capacity to make a

5

decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a-1)(1). "A patient lacks the capacity to make a decision regarding the administration of medication if the patient does not understand the nature of the mental disorder or the necessity of the medication." *State ex rel. C.G.*, 372 S.W.3d 746, 750 (Tex. App.—Dallas 2012, no pet.). To determine if treatment with the proposed medication is in the best interest of the patient, the court must consider:

(1)  the patient's expressed preferences regarding treatment with psychoactive medication;

(2)  the patient's religious beliefs;

(3)  the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

(4)  the consequences to the patient if the psychoactive medication is not administered;

(5)  the prognosis for the patient if the patient is treated with psychoactive medication;

(6)  alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and

(7)  less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.

TEX. HEALTH & SAFETY CODE ANN. § 574.106(b).

C.  **Standard of Review**

Both orders below were required to be supported by clear and convincing evidence. *See id.* §§ 574.106(a-1), 574.034(a). Clear and convincing evidence is that "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction

6

as to the truth of the allegations sought to be established." *State ex rel. T.M.*, 362 S.W.3d 850, 851–852 (Tex. App.—Dallas 2012, no pet.) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam)). "In evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010)."We resolve disputed fact questions in favor of the finding if a reasonable fact finder could have done so, and we disregard all contrary evidence unless a reasonable fact finder could not have done so." *State ex rel. R.P.*, 511 S.W.3d 71, 76 (Tex. App.—El Paso 2014, no pet.).

"In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *State ex rel. M.P.*, 418 S.W.3d 850, 853 (Tex. App.—Dallas 2013, no pet.); *see In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The inquiry is whether the evidence, both disputed and undisputed, is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We must consider whether the disputed evidence is of such a nature that a reasonable factfinder could not have resolved it in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

7

### III. ANALYSIS

C.G. argues the evidence is legally and factually insufficient to support the trial court's orders.[2]

### A. Temporary Inpatient Commitment Order

#### 1. Person with a Mental Illness

The court found that C.G. is a person with a mental illness. In her brief, C.G. argues that "[a]n expert diagnosis of mental illness alone is not sufficient to confine a patient for treatment and . . . that the determination that C.G. was mentally ill was factually and legally insufficient in making a finding of a mental illness." In liberally construing this assertion, we understand C.G. to be arguing that Dr. Dulgheru's conclusory statement that C.G. was suffering from schizoaffective disorder, bipolar type, was not sufficient to establish that she is a person with a mental illness. It is true that an expert diagnosis of mental illness, standing alone, is not sufficient to confine a patient for treatment. *See State ex rel. E.R.*, 287 S.W.3d 297, 302 (Tex. App.—Texarkana 2009, no pet.). But C.G. cites no authority, and we find none, for the proposition that a physician's diagnosis of a mental illness is not sufficient to establish that the proposed patient suffers from a mental illness. Based on the record before us, which includes Dr. Dulgheru's undisputed diagnosis of schizoaffective disorder, bipolar type, and his testimony concerning C.G.'s delusional

---

[2] Neither party raises the issue of mootness, but we note that forty-five days have already elapsed since the trial court's orders, which means both orders have now expired. However, this renders neither the order committing C.G. to involuntary inpatient treatment nor the order for psychoactive medication moot, as the social stigma associated with such orders continues well after an individual subject to them is released from treatment. *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *J.M. v. State*, 178 S.W.3d 185, 189 (Tex. App—Houston [1st Dist.] 2005, no pet.) (citing *State v. Lodge*, 608 S.W.2d 910, 912 (Tex. 1980)). Therefore, we will address the merits of this appeal.

8

thinking, we conclude that the evidence is legally and factually sufficient to produce in the mind of the factfinder a firm belief or conviction that C.G. is a person with a mental illness. *See In re Breeden*, 4 S.W.3d 782, 788 (Tex. App.—San Antonio 1999, no pet.).

### 2. Harm to Others

The State was required to also prove by clear and convincing evidence that because of C.G.'s mental illness, she is likely to cause serious harm to others. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(B). This must be shown through evidence of an "overt act or a continuing pattern of behavior." *Id.* § 574.034(d)(1). Both words and actions can be evidence of an overt act. *State v. K.E.W.*, 315 S.W.3d at 22. A recent overt act "'tends to confirm' that the patient poses a likelihood of serious harm to others . . . if the overt act is to some degree probative of a finding that serious harm is probable, even though the overt act itself may not be dangerous." *Id.* at 24. "The overt act itself need not be of such character that it alone would support a finding of probable serious harm to others." *Id.*

Citing no authority, C.G. argues that because the incident of assault preceded her admission to the Rio Grande State Center, it was too far removed to be considered a "recent overt act" within the meaning of Texas Healthy and Safety Code § 574.034(d). However, "Texas law does not require relatives or physicians of the mentally ill (or the courts) to stand idly by until serious harm occurs. Indeed, the purpose of temporary commitment is to avoid such harm." *G.H. v. State*, 94 S.W.3d 115, 117 (Tex. App—Houston [14th Dist.] 2002, no pet.).

Dr. Dulgheru did not testify, or even imply, that C.G. had stabilized since the recent

9

assault and no longer posed a threat to her family. To the contrary, Dr. Dulgheru testified that C.G. was "becoming more aggressive." She hit her sister with a water bottle, believed she was defending herself against her family, accused her family of killing a son that never existed, and expressed homicidal intent. *See id.* at 25–26 (holding that proposed patient's "statements regarding his belief that he had an assignment to impregnate women," coupled with other actions evincing that he planned on following through on his belief, "were all overt acts within the meaning of [§] 574.034(d)," despite no statement by the proposed patient "that he intended to impregnate anyone against her will"); *see also G.M. v. State*, No. 05-12-01633-CV, 2013 WL 4478205, at *3 (Tex. App.—Dallas Aug. 20, 2013, no pet.) (mem. op.) (concluding that "evidence appellant assaulted another patient at the group home is evidence of an overt act that was 'to some degree probative' of a finding that serious harm to others was probable"); *J.S. v. State*, Nos. 01-12-00096-CV, 01-12-00097-CV, 2012 WL 3776980, at *4 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) ("The evidence that J.S. assaulted his mother is evidence of an overt act that is probative of a finding that serious harm to others is probable if he is not treated."). Dr. Dulgheru's testimony made clear that C.G. "acts upon" her delusions concerning her family, and her alternative to in-patient treatment would be "acting out" and "going back to jail." This evidence was undisputed. Regardless of the fact that the assault precipitated her admission to the Rio Grande State Center, the record establishes that, without treatment, C.G. was likely to cause serious harm to others; namely, her family.

We conclude the record contains legally and factually sufficient evidence of a

recent overt act that tends to confirm C.G. is likely to cause serious harm to others.[3] We overrule this issue.

## C.     Order for the Administration of Psychoactive Medication

C.G. does not challenge the trial court's finding that the order for the administration of psychoactive medication was in her best interest. Rather, she merely argues that "because the evidence is legally and factually insufficient to support the trial court's order of temporary commitment, the evidence is also legally and factually insufficient to support the order to administer psychoactive medications." However, because we have concluded that the evidence is legally and factually sufficient to support the trial court's order concerning temporary commitment, that conclusion is dispositive of the specific issue C.G. raises. *See State v. K.E.W.*, 315 S.W.3d at 26. We overrule this issue.

## IV.     CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
22nd day of December, 2022.

---

[3] C.G. also challenges the trial court's finding that she is experiencing substantial mental or physical deterioration of her ability to function independently. Because the trial court was not required to find both that she is likely to cause serious harm to others and that her condition is deteriorating to commit C.G. on a temporary basis, we need not address the latter finding. *See Mezick v. State*, 920 S.W.2d 427, 431 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see also* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

11